IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

SARAH M. PERKINS,                                    )
                                                     )
        Plaintiff,                                   )
                                                     )
        v.                                           )
                                                     )        Case No. 11-cv-2557 KHV/KMH
HARTFORD LIFE AND ACCIDENT                           )
INSURANCE COMPANY                                    )
                                                     )
        and                                          )
                                                     )
GROUP LONG-TERM DISABILITY                           )
PLAN FOR EMPLOYEES OF                                )
AMERICAN INTERNATIONAL GROUP, INC.                   )
                                                     )
        Defendants.                                  )

**DEFENDANT THE HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY'S
RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY REQUESTS**

        Defendant Hartford Life and Accident Insurance Company ("Hartford") submits this
memorandum of law in response to Plaintiff's Motion to Compel Discovery Requests and
Memorandum in Support thereof (Doc.'s 23 & 24).

**I.      Nature of the Matter Before the Court**

        This is a case governed by the Employee Retirement Income Security Act of 1974, as
amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*  Presently before the Court is plaintiff Sarah
Perkins' ("Perkins") motion to compel responses to interrogatories and requests for production of
documents purportedly seeking extra-record discovery related to the scope and impact of
Hartford's dual role conflict of interest. Defendant Hartford objects and opposes Perkins' extra-
record discovery requests for the reasons set forth below.

## II.     Statement of Facts

On or about June 4, 2008, Perkins, a former Customer Account Specialist at American International Group, Inc. ("AIG"), stopped working due to severe Crohn's disease.  As an AIG employee, Perkins was insured under AIG's long-term disability plan which is insured and administered by Hartford. Perkins applied for and was initially approved for long-term disability benefits under the plan.  On January 13, 2011, her benefits were terminated at the test change from "own occupation" to "any occupation," based in part on a letter by her GI specialist, Dr. Connor, advising that Perkins could sit eight hours in the work day, but only for one hour at a time as her Crohn's disease would necessitate frequent trips to the bathroom.

Perkins appealed, claiming that she continued to be disabled with pain, diarrhea with blood, and that her Crohn's disease was highly influenced by stress for which she was taking anti-depressant and anti-anxiety medications.  Perkins' records were then sent to a third-party vendor for a co-morbid medical review by a psychiatrist, Dr. Lurie, and an internal medicine specialist, Dr. Vasquez.  Dr. Lurie opined that Perkins had no psychiatric functional limitations. Dr. Vasquez opined based in part on a conversation she had with Dr. Connor that Perkins' Crohn's disease would allow her to work at a full time sedentary level occupation with accommodation.  Specifically, Dr. Vasquez noted that Dr. Connor described that Perkins' small bowel was improved, she was able to take medications and was having less stools and a stable blood count.  When asked by Dr. Vasquez to comment on Perkins' functional ability, Dr. Connor declined to answer because he could not say anything that would make Perkins or her insurance company happy.  On June 9, 2011, Hartford upheld the termination of Perkins' long-term disability benefits as it determined that she failed to meet the policy definition of disability.

III.    **Issue Presented**

Extra-record discovery in ERISA cases involving a dual role conflict of interest may, at times, be appropriate if the discovery sought is relevant to the scope and impact of an administrator's dual role conflict of interest.  *Murphy v. Deloitte & Touche Group Ins.*, 619 F.3d 1151, 1162-1163 (10th Cir. 2010).  Extra-record discovery, however, is inappropriate where a claimant seeks to engage in unnecessarily broad discovery that slows the efficient resolution of an ERISA claim.  *Id*. at 1163.  Where a claimant seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence regarding the scope and impact of an administrator's dual-role conflict of interest and the claimant's discovery requests are overly broad, costly and unduly burdensome, the claimant has failed to meet its burden of showing the propriety of its requests. *Id*. Thus, the extra-record discovery sought by Perkins here is not appropriate and should be prohibited by the Court.

IV.    **Argument**

A.    **The Arbitrary and Capricious Standard of Review Applies to This Case.**

The Plan provides that a claimant must submit written proof of loss to Hartford, and that the proof of loss "must be satisfactory" to Hartford.  Perkins Rec. AIG000017.  The Plan states that Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and conditions of the Policy."  Perkins Rec. AIG000034.  Based on this express grant of discretionary authority to Hartford, the Court must review this case under the arbitrary and capricious standard of review.  *Murphy*, 619 F.3d at 1157 (Where the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the Court will review the administrator's decision for an abuse of discretion.).  Perkins concedes that "there is no question that a conflict exists in this

case," that "Hartford is both the administrator of benefits and the payor of benefits under the AIG plan" and that the "abuse-of-discretion standard of review" applies in this case. (Doc. 24, p.4). Thus, the Court's review of this case under the abuse of discretion standard is proper.

Under the abuse of discretion standard, the Court will "uphold the administrator's decision as long as it has a 'reasoned basis.'" *Williams v. Metro. Life Ins. Co.*, No. 10-1504, 2012 WL 375503 at *3 (10th Cir. Feb. 7, 2012)(citation omitted). "The administrator's decision need not be the only logical decision or even the best decision; rather, 'our review inquires whether the administrator's decision resides somewhere on a continuum of reasonableness-even if on the low end.'" *Id*. (citation omitted). "An administrator abuses its discretion when its decision is not supported by substantial evidence." *Id*. (citation omitted). "Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion." *Id*. (citation omitted). "It is 'more than a scintilla [of evidence], but less than a preponderance.'" *Id*. (citation omitted). "'Substantiality of the evidence is based upon the record as a whole.'" *Id*. (citation omitted).

**B.      Extra-Record Discovery Regarding Hartford's Dual-Role Conflict of Interest Is Not Appropriate and Should Not Be Permitted.**

Perkins seeks extra-record discovery in three broad categories regarding (1) the weight of Hartford's dual role conflict of interest; (2) financial incentives related to Hartford's decision; and (3) statistical information regarding the approval and denial of claims. Despite her blanket assertions to the contrary, Perkins' extra-record discovery seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence related to the scope and impact of Hartford's dual role conflict of interest. Perkins' discovery is unnecessary and serves only to stand in the way of the speedy, inexpensive and efficient resolution of this claim and in that it is overly broad, unduly burdensome, costly and amounts to nothing more than a

speculative fishing expedition.  Perkins extra-record discovery also seeks information of a highly sensitive, confidential and propriety nature and further seeks information related to third-parties and unrelated claims.

**i.      Extra-Record Discovery is Not Warranted Based on the Particular Circumstances Surrounding Hartford's Administration and Denial of Plaintiff's Claim, the Facts of this Case or Prevailing Conflict Discovery in ERISA Cases.**

Hartford does not dispute that the 10th Circuit in *Murphy* clarified that "discovery related to the scope and impact of a dual role conflict of interest *may, at times*, be appropriate." 619 F.3d 1151, 1162 (10th Cir. 2010)(emphasis added).  However, even when a conflict of interest exists with a plan administrator, "the Court is not required to allow discovery and supplementation of the record." *Jaremko v. ERISA Admin. Comm.*, No. 10-1137-RDR, 2011 WL 42881 at *1 (D. Kan. Jan. 6, 2011).  "[T]he party seeking discovery and supplementation of the record bears the burden of establishing it is warranted."  *Id*.

In determining whether to allow such discovery, the Court "must apply Fed.R.Civ.P. 26(b)(1) to discovery requests related to a dual-role conflict of interest ."  *Id*. at *2.  "Rule 26(b) will not permit unlimited discovery."  *Murphy*, 619 F.3d at 1163.  "Rule 26(b)(1) permits discovery only of '[r]elevant information' and the discovery must 'appear[] reasonably calculated to lead to the discovery of admissible evidence.'"  *Id.*  "Moreover, all discovery is limited by Rule 26(b)(2), which protects against, *inter alia*, overly burdensome discovery requests, discovery of cumulative materials, and overly costly discovery requests."  *Id*. (citation omitted)(emphasis in the original). The Court in *Murphy* emphasized that "[a]lthough Rule 26(b) will govern these (and other) discovery requests in ERISA cases…neither a claimant nor an administrator should be allowed to use discovery to engage in unnecessarily broad discovery that slows the efficient resolution of an ERISA claim."  619 F.3d at 1162-1163.

"[D]istrict courts will often need to account for several factors that will militate against broad discovery." *Id*. at 1163.  First, the district must "bear in mind that ERISA seeks a fair and informed resolution of claims, ERISA also seeks to ensure a speedy, inexpensive, and efficient resolution of those claims." *Id*. (citation omitted).  "Rule 26(b), although broad, has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Id*. (citations omitted).  "Second, in determining whether a discovery request is overly costly or burdensome in light of its benefits, the district court will need to consider the necessity of discovery." *Id*.

> For example, the benefit of allowing detailed discovery related to an administrator's financial interest in the claim will often be outweighed by its burdens and costs because the inherent dual role conflict makes that financial interest obvious or the substantive evidence supporting denial of a claim is so one-sided that the result would not change even giving full weight to the alleged conflict.  Similarly, a district court may be able to evaluate the effect of a conflict of interest on an administrator by examining the thoroughness of the administrator's review, which can be evaluated based on the administrative record.  And, without further discovery, a district court may allocate significant weight to a conflict of interest where the conflict reveals a lack of thoroughness.

*Id*. at 1163-1164.

While Perkins relies on several cases permitting extra-record discovery of information related to the financial incentives of a plan administrator and statistical information regarding the approval or denial of claims, this Court must consider Perkins' requests in the context of the particular facts and circumstances surrounding Hartford's administration and denial of plaintiff's appeal.  As this Court has acknowledged, discovery ***may*** be appropriate depending on the circumstances of a particular case.  *See Shultz v. Blue Cross & Blue Shield of Kansas, Inc.*, No. 09-1220-WEB, 2010 WL 5067629 at *2 (D. Kan. Dec. 7, 2010)(emphasis added).  "Benefits decisions arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts-which themselves vary in kind and in degree of seriousness…."

*Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008).  Thus, "conflicts are but one factor among many that a reviewing judge must take into account."  *Id.*

Perkins contends that the fact that a conflict exists in this case warrants discovery and supplementation of the record.  Where, as here, there is no dispute a conflict exists and the conflict is apparent on the face of the administrative record, discovery is not necessary.  Perkins also cites the fact that she was required to apply for Social Security Disability Income ("SSDI") Benefits as a factor entitling her to extra-record discovery.  It is, however, "prudent for…claims administrators… who offer LTD plans to advise every employee who makes a disability claim to also pursue Social Security disability benefits."  *Williams*, 2012 WL 375503 at *10.  "It may help the employee and it could help to defray the costs of providing disability benefits to employees."  *Id.* (citation omitted).  Here, Hartford provided Perkins with an educational tool explaining the benefits of SSDI, the differences between SSDI and her private LTD coverage and explaining how SSDI works together with Hartford's benefits to satisfy the replacement ratio of her pre-disability income.  Perkins Rec. HART000264-HART000266, attached as Exhibit 1.  The offset structure that arises when a claimant receives both private LTD coverage and is awarded SSDI enables employers and employees to purchase affordable private group LTD insurance while avoiding costly duplication of coverage and over-insurance. Perkins Rec. HART000265.

Perkins further argues that nowhere in the file is there any indication that Perkins' SSDI benefit award was considered as part of the claim decision.  A plan administrator's alleged failure, however, to consider a Social Security Administration's disability determination is but one factor for the Court to consider in deciding whether the plan administrator's decision was arbitrary and capricious.  *See Lingo v. Hartford Life & Acc. Ins. Co.*, No. 1:09-CV-867, 2011

WL 3608030 at *9 (S.D. Ohio Aug. 16, 2011).  Thus, Hartford's requirement that Perkins apply for SSDI benefits and whether it considered Perkins' SSDI benefit award goes only to the reasonableness of its overall decision rather than the presumed conflict of interest and does not entitle her to extra-record discovery regarding the financial incentives of Hartford employees and independent reviewers or statistical information regarding the approval or denial of claims.

Perkins further cites Hartford's review and consideration of her attending physicians' statements as a basis to allow extra-record discovery in this matter.  Specifically, Perkins compares a statement submitted prior to the initial denial of her claim verses additional statements submitted on appeal and further speculates about the veracity of one of Hartford's independent medical reviewer's summary of her conversations with Perkins' physicians. However, Hartford's hiring of independent physicians to review Perkins' file "actually decreases the importance of a plan administrator's inherent conflict of interest."  *Rizzi v. Hartford Life & Accident Ins. Co.*, No. 09-2107, 2010 WL 2473853 at *10 (10th Cir. June 18, 2010)(citations omitted).  Further, "general accusations of bias against [independent physicians] do not provide a reason to doubt what otherwise appear to be reasonable and competent opinions."  *Id*.  Hartford's review and consideration of Perkins' attending physicians' statements ultimately goes to the reasonableness of its overall decision rather than the presumed conflict of interest.

Finally, Perkins claims that the fact that there are notations in the file that Hartford's surveillance investigator was working closely with its claims adjuster indicates that Hartford was "searching for a reason to deny [her] claim" and warrants discovery and supplementation of the record.   "As a general matter, 'there is nothing procedurally improper about the use of surveillance' in connection with the investigation of a disability benefits claim."  *Johnson v. Liberty Life Assurance Co. of Boston*, No. 07-6115, 2008 WL 268290, at *5 (10th Cir.  Jan. 31,

2008)(citation omitted)(finding that the mere fact that the administrator conducted surveillance and shared information and medical records with the employees handling his worker's compensation claim did not demonstrate bad faith on the part of the administrator because the administrator did not expressly rely on the surveillance results in denying plaintiff's disability benefits.).

Here, Hartford relied on the surveillance evidence in conjunction with the medical evidence submitted by Perkins.  A plan administrator's"[r]eliance on surveillance evidence in conjunction with medical evidence in not improper." *Rizzi*, 2010 WL 2473858 at *12.  Thus, the fact that Hartford worked with a surveillance investigator does not warrant discovery and supplementation of the record.  Again, Hartford's review and consideration of the surveillance evidence of Perkins' goes to the reasonableness of its overall decision rather than the presumed conflict of interest. *See Wright v. The Hartford Benefit Mgmt. Serv.'s*, No. 11-602 (FSH)(MAH) 2011 WL 1680094 at *7 (D. N.J. May 11, 2012)(Finding no indication that Hartford's consideration of surveillance footage, as one piece of evidence among many, was improper); *Westerheide v. Hartford Life Ins. Co.*, No. 10-cv-471-MJR-PMF, (S.D. Ill. March 8, 2012)(Finding that consideration of a surveillance tape was not improper when the tape was only one of multiple factors relied upon by the independent reviewing physician and the plan administrator)(attached as Exhibit 2); *Lingo v. Hartford Life & Acc. Ins. Co.*, No. 1:09-Cv-867, 2011 WL 3608030 at *7 (S.D. Ohio Aug. 16, 2011)(Finding that surveillance video and related surveillance reports were important pieces of evidence supporting the plan administrator's decision); *Cusumano v. Continental Cas. Co.*, No. 6:07-cv-141-0rl-22KRS, 2008 WL 1711405 at *8 (M.D. Fla. April 10, 2008)("In a case where a great deal of evidence is based on subjective reports of pain by the Plaintiff, the video surveillance provides objective evidence of Plaintiff's

capabilities on those days.  The Administrator was correct in relying on the footage in assessing plaintiff's subjective reports.").

ii.     **Plaintiff's Discovery Requests Seek Irrelevant Information Not Reasonably Calculated to   Lead to the Discovery of Admissible Evidence Related to the Scope and Impact of Hartford's Dual Role Conflict of Interest and Are Not Narrowly Tailored to Facts Surrounding Hartford's Dual Role Conflict of Interest.**

Hartford has demonstrated in the preceding section of this memorandum that the Court should preclude any extra-record discovery in this case.  The Court, therefore, need not consider plaintiff's specific proposed discovery requests. However, the following brief review of the proposed discovery further underscores that the discovery requests are neither necessary nor appropriate.

1.     **Performance Evaluations or Reviews of Hartford Employees**.

Plaintiff seeks information about the performance evaluations and performance reviews of each Hartford employee who was involved in plaintiff's claim.  (Doc. 24-2, Request for Production "RFP" No. 11).  This information is of no relevance to the Court's consideration of the reasonableness of the claim determination at issue or the weight of Hartford's conflict of interest.  Information related to an employee's credibility, such as performance evaluations or reviews, are not within the permitted areas of inquiry regarding a dual role conflict of interest. *See Clark v. Am. Elec. Power Sys. Long-Term Disability Plan*, No. 4:12cv-00009-JHM, 2012 WL 2553428 at *4 (W.D. Ky. July 2, 2012)("Specific topics related to 'reviewer credibility,' however, are deemed not to be within the 'permitted areas of inquiry,' including…reviewer performance reviews.").

This request is also overly broad in that it seeks the performance evaluations and reviews of "each" Hartford employee who was "involved" in Plaintiff's claim and fails to distinguish between Hartford employees who were involved in purely clerical activities, the decision-makers

responsible for the initial approval of plaintiff's claim and the decision-makers actually responsible for denying plaintiff's appeal. *See Bottoms v. Liberty Life Assurance Co.*, No.11-cv-01606-PAB-CBS, 2011 WL 6181423 at *6 (D. Colo. Dec. 13, 2011).  This is further unduly burdensome and intrusive in that it seeks private, confidential employment information about individuals and violates Conn. Gen. Stat. § 31-128f, which prohibits the disclosure of personnel files and applies to Hartford, a Connecticut Company.

"The Tenth Circuit has recognized that 'personnel files often contain sensitive personal information…and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly.'"  *Rivera v. Unum Life Ins. Co. of Am.*, No. 11-cv-02585-WYD-KLM, 2012 WL 2709138 at *4 (D. Colo. July 9, 2012)(prohibiting discovery of employees' complete personnel files because the request raised "the specter of a fishing expedition, rather than a reasoned request for discovery."); *see also McQueen v. Life Ins. Co. of N. Am.*, 595 F.Supp.2d 752, 756 (E.D. Ky. 2009)(prohibiting the disclosure of performance reviews and personnel files for reviewers who are its employees as the requests were unduly burdensome and their intrusiveness outweighed any likely benefit).  Here, the performance evaluations or reviews at issue contain private and confidential information that Hartford's employees expect will be used solely in conjunction with their employment at Hartford and will not be generally disseminated to third parties.  Thus, dissemination of this private, confidential employment information would violate Hartford' employees' personal privacy rights.

## 2.  Written Criteria or Standards for Employee Compensation.

Plaintiff seeks information about Hartford's written criteria or standards for employee compensation, bonuses and awards.  (Doc. 24-2, RFP No. 12).  As stated in Hartford's response to Perkins' Request for Production No. 12, Hartford's does not provide its employees with any

incentive, remuneration, bonuses, awards, achievements or other recognition based in whole or part upon the denial or termination of long-term disability claims.  *Id*.  Instead, each claim is evaluated based upon the particular policy provisions and information before the administrator, with due regard for its fiduciary obligations.  Discovery about the compensation about Hartford's personnel would not produce any admissible or relevant information.  Such discovery would not be appropriate given the needs and issue of this case.

Further, discovery related to Hartford's written criteria or standards for individual employee compensation, bonuses and awards is not related to conflict of interest discovery in that how an administrator compensates individual employees does not change the court's standard of review, i.e. abuse of discretion. In *Christie v. MBNA Group Long-Term Disability Plan*, the court denied a claimant's request to conduct discovery into the administrator's bonus and incentive programs because it would not change the standard of review.  No. 08-cv-44, 2008 WL 4427192 at *3 (D. Me. Sept. 25, 2008).  For example, the court noted that if discovery revealed that the claims handlers received incentives for denying claims that wouldn't necessarily mean that the claimant merited benefits.  *Id*.  Nor would the evidence tend to make the evidence in the administrative record immaterial or weigh less.  *Id*.  Where, as here, an employee does not receive any incentive, remuneration, bonuses, awards, achievements or other recognition based in whole or part upon the denial or termination of  a claim, discovery related to employee compensation has no connection to weight of a conflict of interest.  *See also Winterbaurer v. Life Ins. Co. of N. Am.*, No. 07-1206, 2008 WL 4643942 (E.D. Mo. Oct. 20, 2008)(denying discovery requests for the names, personal information and financial information of employees involved in evaluating a claimant's claim).

### 3.      Discovery Regarding Independent Reviewing Physicians.

During the course of its review of Perkins' appeal, Hartford referred the file to an independent third party vendor, University Disability Consortium ("UDC"), in order to obtain independent medical reviews of Perkins' medical information in the administrative record. UDC, in turn, assigned the review of Perkins' file to two independent physicians, Dr. Rosaline Vasquez and Dr. Melvyn Lurie.  Perkins has directed several of her discovery requests at UDC, Dr. Vasquez and Dr. Lurie. Perkins argues that she should be allowed to conduct extensive extra-record discovery relating to the independent reviews conducted by Dr. Vasquez and Dr. Lurie and UDC as a third party vendor, which arranged their review.  The foundation of this argument is the cynical proposition that an independent reviewing physician consultant inevitably will tailor his or her conclusions to favor the perceived position of the party paying for the reviews. Specifically, Perkins speculates regarding the veracity of Dr. Vasquez's summary of her conversations with Perkins' physicians. *See* Doc. 24, p.6 ("Plaintiff is skeptical as to the accuracy of Dr. Vasquez's summary regarding her conversations with Plaintiff's physicians[,]" and "unfortunately, the undersigned was not involved in the appeal process and therefore could not verify with her physicians as to the veracity of Dr. Vasquez's comments during the administrative process.").  This is fatally flawed for multiple reasons.

Perkins has offered absolutely no basis for believing that Dr. Vasquez and Dr. Lurie rendered dishonest reports to find no disability.  Quite the contrary, the reports of Dr. Vasquez and Dr. Lurie demonstrate that these independent physicians based their opinions on their review and analysis of the medical materials in the administrative record and their telephone conversations with Perkins' treating physicians.  The Court cannot presume that an independent physician will render a dishonest medical opinion in return for payment of his file review.  *Rizzi*,

2010 WL 2473858 at *9 ("General accusations of bias against [independent physicians] do not provide a reason to doubt what otherwise appear to be competent and reasonable opinions."); *Broeski v. Provident Life & Acc. Ins. Co.*, No.06-C-3836, 2007 WL 1704012 at *2 (N.D. Ill. 2007)("The fact that a doctor is regularly consulted by an insurance company (or defense interest more generally) does not, *ipso facto*, render the doctor biased."); *see also Fortune v. Group Long-Term Disability Plan for Employees of Keyspan Corp.*, 637 F.Supp.2d 132, 143-144 (E.D. N.Y. 2009); *Schnur v. CTC Comm. Corp. Group Disability Plan*, No. 05 Civ. 3297(RJS), 2010 WL 1253481 at *15 (S.D.N.Y. March 29, 2010)("ERISA does not require a plan administrator to afford greater deference to the plaintiff's treating physician than that afforded to physicians retained by the administrator to review the case….")(citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003)).

Perkins has also ignored the nature of the conflict of interest at issue.  Although the Court will consider Hartford's presumed conflict of interest as one factor under *Glenn* and *Murphy*, the relevant inquiry is whether the conflict tainted the review of the claim by Hartford, as decision-maker.  The conflict inquiry does not concern or involve potential conflicts of extraneous third parties.  The conflict of interest analysis relates to the claim administrator, not the administrator's paid consultants, and, therefore discovery is not permissible regarding such consultants. *Abromitis v. Continental Cas. Co.*, No.03-2425, 2004 WL 2491367 at *3-4 (4th Cir. Nov. 5, 2004).  The Court will be able to assess the reliability of the independent physician's reports based on the nature of their discussion of the evidence.  No discovery is necessary to supplement the reports themselves and the medical documentation in the administrative record on which they are based.

Perkins seeks information about the compensation paid to both UDC and Dr. Vasquez and Dr. Lurie (Doc. 24-2 at 6, ROG No. 5).  All payments are made to UDC, not the reviewing physicians, in the normal course of business as compensation for services rendered. The amounts Hartford paid to UDC for the services rendered by Dr. Vasquez and Dr. Lurie is evidence only of an ongoing business relationship between Hartford and UDC.  This is irrelevant to the conflict inquiry in this case, because neither UDC nor the reviewing physicians were vested with the authority to terminate Perkins' benefits.  Dr. Vasquez and Dr. Lurie were asked to define any functional and or psychological limitations regarding Perkins.  Further, UDC is an independent third party vendor and what the amount it pays its physicians is not within Hartford's possession, custody or control. Accordingly, the amount paid by Hartford to UDC for the medical review services rendered by independent physicians is not competent evidence of Hartford's alleged conflict in this case.

In addition, Perkins' discovery request related to compensation paid to UDC, Dr. Vasquez and Dr. Lurie seeks information that the administrative record contains.  For example, the administrative record fully documents the referral to UDC and Hartford's communications with UDC.  Perkins Rec. HART000099-HART000101, attached as Exhibit 3.  These materials document both the amount of time that Dr. Vasquez and Dr. Lurie spent on their reviews and UDC's fee for their services.  *Id*.  All of these materials are readily available for Perkins' review in the administrative record.  The presence of these materials in the record not only establishes that Perkins' proposed discovery would serve no purpose, but also shows that Perkins is simply seeking discovery for the sake of discovery without even taking into consideration the information already before her in the administrative record.  Perkins' dogged pursuit of such needless discovery is contrary to underlying principles of ERISA.

ERISA requires claim administrators to obtain the review of medical issues by independent physicians. 29 C.F.R. § 2560.503-1(h). When Hartford referred Perkins' file to UDC for an independent medical review, Hartford was complying with its obligations under ERISA to provide a full and fair review of Perkins' appeal. Moreover, the Tenth Circuit has long recognized that "the hiring of independent physicians…to review a medical file actually *decreases* the importance of a plan administrator's inherent conflict of interest, because they are not directly employed by the administrator." *Rizzi*, 2010 WL 2473858 at *10. The administrative record clearly documents that Hartford used the services of UDC to obtain the file reviews by Dr. Vasquez and Dr. Lurie. There is nothing insidious about Hartford's use of UDC to obtain reviews Perkins' file by independent physicians.

Hartford administers many thousands of claims for disability benefits under hundreds of group disability plans. Hartford must make use of medical consulting firms such as UDC in order to obtain independent medical reviews, and could not possibly arrange for hundreds of independent medical reviews without the aid of such firms. As the Seventh Circuit held, "[p]aying for a legitimate and valuable service in order to evaluate a claim thoroughly does not create a review altering conflict." *Davis v. UNUM Life Ins. Co. of Am.*, 444 F.3d 569, 575 (7th Cir.), *cert. denied*, 127 S. Ct. 234 (2006). Discovery regarding Hartford's relationship with and compensation of vendors and independent consultants is neither necessary nor proper. *See Abromitis*, 2004 WL 2491367 at *3; *Broeski*, 2007 WL 1704012 at *2.

Perkins' discovery would delve into the conclusions of independent physicians retained through UDC about a large number of third-party claimants. Specifically, Perkins seeks information regarding the number of claims that UDC, Dr. Vasquez and Dr. Lurie reviewed during the years 2008-2011, the number of claims UDC, Dr. Vasquez and Dr. Lurie reviewed in

which they found a claimant not disabled for the years 2008-2011 and the number of claims reviewed by UDC, Dr. Vasquez and Dr. Lurie that were denied by Hartford.  (Doc. 24-1, ROGS #'s 7, 8 & 10).  Again, the reports submitted by UDC do not contain conclusions as to whether an individual meets the definition of disability under the applicable policy.  Hartford has agreed to produce, upon the entry of a protective order the number of claims reviewed by UDC during the years 2008-2011.   Hartford, however, objects to Perkins' remaining discovery requests regarding the number of claims reviewed by UDC, Dr. Vasquez and Dr. Laurie.

These discovery requests would also inevitably require discovery of the underlying facts of all of those third-party claims in order to assess the independent physicians' actions.  These discovery requests would further require persons to review manually each of the 2,796 claim files that contain a review performed by UDC between 2008 and 2011 to determine the result.  Claim files contain hundreds and sometimes thousands of pages of material.  For example, assuming it takes an extra two hours to determine what impact an independent reviewer's report had on a claim and the labor charge associated with reviewing a claim file is $20 per hour, it would cost approximately $56,000 to answer Perkins' Interrogatory No. 8 in straight labor costs alone.  This does not include copying expenses, the expense of preparing files for review, setting up computers and so forth.

Given the amount in controversy in Perkins' view of this case ($123,000 using 5% present value calculation), this expense of answering Perkins' Interrogatory No. 8, plus Interrogatories No.'s 7 and 10 would be unreasonable.  *See*  Fed.R.Civ.P. 26(b)(2)(C)(iii)(limitation on the frequency and extent of discovery are required when "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at

stake in the action, and the importance of the discovery in resolving the issues.").  Accordingly, the preparation of responses to Perkins' requests would be unduly burdensome and the expense of responding would far outweigh the relevance, if any, the information would yield.  Should, however, the Court find that Perkins is entitled to the discovery she seeks, Hartford should not have to bear the brunt of the cost associated with such burdensome discovery.  If the Court were to allow such inquiry, Perkins should bear its costs.  The Court, "has the discretion, in the interests of justice, to prevent excessive or burdensome discovery," and should exercise that discretion in this case.  *Qwest Communications Int'l, Inc. v. Worldquest Networks, Inc.,* 213 F.R.D. 418, 419 (D. Colo. 2003).

Moreover, the proposed discovery would serve no purpose in the context of this litigation.  The issue before the Court is whether Hartford abused its discretion in deciding to terminate Perkins' long-term disability benefits.  How independent physicians retained through UDC reviewed the claims of other unrelated persons with unrelated medical histories has no relevance to that issue.  Each ERISA claim determination is highly fact specific.  The introduction of evidence about unrelated non-party claims would unduly complicate this litigation.  The "ultimate result of traveling down such a path would be the transformation of every individual ERISA case into hundreds of cases, as the Court would be presented with case upon case in which a plaintiff's physicians or a defendant's consultants issues an opinion in favor of or against a finding of 'disabled.'"  *Shepherd v. Metro. Life Ins. Co.*, No. 1:04CV136, Order at 18-20 (W.D.N.C. Mar. 31, 2006).  Perkins' discovery "hints at the type of fishing expedition that is antithetical to the objectives underlying ERISA litigation."  *Hatch v. Federated Retail Holdings, Inc.*, No. 06-cv-01598-REB-CBS, 2007 WL 841800, at *4 (D. Colo. Mar. 20, 2007).

4.      **Discovery Regarding Statistics.**

Perkins seeks statistical information regarding the denial and termination rates on AIG, Inc. employee disability claims from 2008-2011 (Doc. 24-2, RFP's No.'s 13 & 14), Hartford's claims payment history for the group policy at issue from 2008-2011 (Doc. 24-2, RFP No. 15), the number of AIG employees who have applied for or received a disability benefit under the group policy at issue (Doc 24-1, ROGS No.'s 11 & 12) and the number of AIG employees who have received a disability benefit under the group policy at issue whose benefits have been denied or terminated since June 2008 (Doc 24-1, ROG No. 13).

Again, Perkins seeks to delve into information related to a large number of third party claimants whose disability claims are unrelated to Perkins' alleged disability.  Statistics about the approval and termination rates for disability claims may have limited probative value.  *Hogan-Cross v. Metro. Life Ins. Co.*, 568 F.Supp.2d 410 (S.D.N.Y. 2008).  For example, statistics demonstrating that Hartford has a high denial rate for a particular type of claim type may only reflect that a high proportion of the claims did not have merit.  *Id.*  Similarly, high termination rates for a particular ailment might reflect that a high proportion of individuals that Hartford initially granted disability benefits to improved over time making them ineligible for particular benefits.  *Id.*  Inquiry into statistical information across the entire range of long-term disability benefits is not permitted.  *See Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504 (W.D. Ky. 2010).

Furthermore, the cost associated with producing the requested statistical information outweighs the benefit to Perkins.  "[T]he benefit of allowing detailed discovery related to the administrator's financial interest in the claim will often be outweighed by its burdens and costs because the inherent dual role conflict makes that financial interest obvious or the substantive

evidence supporting denial of a claim is so one-sided that the result would not change even given full weight to the alleged conflict." *Murphy*, 619 F.3d at 1163. Because Hartford's dual role conflict of interest makes its financial interest obvious, the benefit of allowing Perkins discovery requests far outweighs the burden and costs associated with gathering and reviewing information regarding unrelated third party claims. This Court in particular has prohibited discovery seeking extensive statistical information concerning applications, claims and denials over a span of years because the request is "an example of an 'unwieldy, burdensome and speculative fishing expedition" mentioned in *Murphy. Rutherford v. Reliance Standard Life Ins. Co.*, No. 10-2456-JWL, 2011 WL 4376557 at *4 (D. Kan. Sept. 20, 2011). These requests are unduly burdensome as they involve hundreds of claimants requiring significant effort on the part of Hartford to organize and summarize this information. Furthermore, out of the context this information would not explain very much. Simply knowing how many claims that Hartford denied or terminated each year does not explain why it denied those claims or if Hartford properly denied those claims.

Finally, it is important to remember that "Congress enacted ERISA to ensure that employees would receive the benefits they had earned, but Congress did not require employers to establish benefit plans in the first place." *Conkright v. Frommert*, 130 S.Ct. 1640, 1648, 176 L.Ed.2d 469 (2010)(citation omitted). Thus, the Supreme Court has "recognized that ERISA represents a 'careful balancing' between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Id*. (citations omitted). "Congress sought 'to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place." *Id*.

(citation omitted).   Thus, the Court should decline Perkins' invitation to further delay and complicate these proceedings through costly extra-record discovery.

**V.        Conclusion**

For the reasons stated in this brief, the Court should deny Perkins' motion to compel discovery and enter an order finding that Perkins may not conduct any extra-record discovery. Furthermore, this Court should deny Perkins' request for attorney fees and costs associated with drafting her Motion to Compel as defendant is substantially justified in its objections.

Dated this 16th day of July, 2012.


Respectfully Submitted,


BAKER STERCHI COWDEN & RICE, L.L.C.


s/ Thomas E. Rice
Thomas E. Rice                    KS Bar #13902
Baker Sterchi Cowden & Rice L.L.C.
2400 Pershing Road, Ste. 500
Kansas City, MO 64108
816/471-2121
Fax: 816/472-0288
rice@bscr-law.com
Attorney for Defendants

## Certificate of Service

I hereby certify the above and foregoing was electronically filed on the 16th day of July, 2012, with the Clerk of the Court by using the CM/ECF system, which will send electronic notifications to the attorney of record listed below.

Talia Ravis
Law Office of Talia Ravis
12120 State Line Rd. #189
Leawood, KS 66209
travis@erisakc.com
Attorney for Plaintiff

/s/ Thomas E. Rice
Attorney for Defendants