# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SARAH PERKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-2557-KHV |
| ) | |
| THE HARTFORD LIFE AND ACCIDENT ) | |
| INSURANCE COMPANY, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

This ERISA-benefits dispute is before the court on plaintiff's motion to compel discovery responses (Doc. 23) and Hartford's motion for leave to file a surreply (Doc. 34). For the reasons set forth below, plaintiff's motion to compel shall be GRANTED IN PART and Hartford's motion shall be GRANTED.[1]

### Background

Highly summarized, this is an action by a former employee for long-term disability benefits under the Employee Retirement Income Security Act of 1974 (ERISA). Plaintiff began her employment with American International Group, Inc (AIG) in 2005 and was

---

[1] Hartford's proposed surreply is attached to its motion and has been considered by the court.

covered by a disability insurance plan issued and administered by Hartford. In June 2008, plaintiff was forced to stop working due to a variety of health problems that included Crohn's disease, chronic blood loss anemia, malabsorption disorders, B-12 deficiency, left-side colitis/proctitis, and chronic pain. Hartford granted plaintiff's application for disability benefits in January 2009 based on a finding that she was unable to perform her "own occupation."

The plan provided that the "test" for disability benefits changed after a two-year period of payment and required plaintiff to show that she was unable to perform "any occupation" in order to receive additional disability payments. Hartford evaluated plaintiff's medical history and submissions in January 2011 and determined that she no longer qualified for disability benefits under the ERISA plan. Plaintiff has exhausted her administrative remedies as required under the plan and ERISA regulations.

## Motion to Compel

Plaintiff moves to compel Hartford to produce documents responsive to production requests 11-15 and to answer interrogatories 5, 7, 8, and 10-13. Plaintiff asserts that discovery responses are warranted because of "the particular circumstances surrounding the administration and denial of plaintiff's claim" and need for information concerning the plan administrator's (Hartford's) conflict of interest. Hartford counters that the discovery responses are not warranted by the circumstances concerning the denial of plaintiff's claim for long-term disability payments. Hartford also argues that the requests are overly broad,

unduly burdensome, and seek irrelevant information. The issues concerning discovery in this ERISA case are discussed in greater detail below.

The plan provides Hartford with the discretion and authority to interpret the terms of the policy and to determine eligibility for benefits. Based on this express grant of discretionary authority to Hartford, the court reviews the denial of benefit under an "arbitrary and capricious" standard. See, e.g., DeGrado v. Jefferson Pilot Fin. Ins. Co., 451 F.3d 1161 (10th Cir. 2006). As a general matter, extra-record supplementation and discovery are not appropriate in the context of additional substantive evidence of the claimant's eligibility for benefits, such as additional medical evidence of disability. Murphy v. Deloitte & Touche Group Ins. Plan, 619 F.3d 1151, 1158 (10th Cir. 2010)(citing Sandoval v. Aetna Life & Casualty Ins. Co., 967 F.2d 377, 380-81)(rejecting consideration of new psychological evaluations not previously submitted to the plan administrator)). However, discovery may be permissible in the context of a plan administrator's dual role conflict of interest or procedural irregularities. Murphy, 619 F.3d at 1160-62. Murphy expressly rejected the creation and application of "special procedural and evidentiary rules" for ERISA cases and directed courts evaluating "dual conflict" discovery issues to apply Fed. R. Civ. P. 26(b) "just as we would apply that rule to other discovery requests." Murphy, 619 F.3d at 1162. Consistent with Rule 26(b), discovery requests in ERISA cases must be relevant and not overly burdensome, cumulative, or unduly expensive. Id. at 1163.

Defendant concedes that discovery in an ERISA case is permissible under certain circumstances described in Murphy and provided answers to certain interrogatories and

produced some documents.[2] However, Hartford maintains its objections to the discovery requests that are discussed in greater detail below.

**Production Request No. 11 and 12**
**Interrogatory No. 5**

Production Request No. 11 seeks the performance evaluations and reviews for every Hartford employee involved with her claim and Production Request No. 12 seeks Hartford's written criteria or standards for employee compensation, bonuses and awards. Interrogatory No. 5 seeks an explanation concerning the compensation paid to any medical provider or consultant who rendered a report or expressed an opinion concerning plaintiff. Plaintiff contends that these discovery requests are relevant and appropriate to show whether any person involved in evaluating her claim had a financial incentive to deny her claim.

Plaintiff's request to compel documents responsive to Production Request Nos. 11 and 12 shall be DENIED. First, the request for the performance appraisals of *any* employee involved with plaintiff's claim is overly broad on its face because it would include clerical employees having no substantive involvement in the decision whether to grant or deny

---

[2] Hartford answered Interrogatory Nos. 1-4 and provided partial answers to other interrogatories. Hartford explains that it answered certain interrogatories and produced certain documents "merely to avoid the expense of further briefing regarding the scope of discovery." See Hartford's Response to Interrogatories, Doc. 24-1, p. 1, par. 1.

plaintiff's claim.[3] More importantly, Hartford stated in its response to Production Request No. 12 that it "does not provide its employees with any incentive, remuneration, bonuses, awards, achievements, or other recognition based in whole or part upon the denial or termination of claims." Based on Hartford's unequivocal discovery response concerning employee compensation, compelling further documents responsive to Production Request Nos. 11 and 12 would not reveal evidence of financial bias by the employees involved in the decision whether to grant or deny plaintiff's disability claim.

During the course of its review, Hartford referred its file to University Disability Consortium (UDC) for an "independent" medical review of plaintiff's medical information. UDC in turn assigned the review of plaintiff's file to two physicians, Dr. Rosaline Vasquez and Dr. Melvyn Lurie. Interrogatory No. 5 seeks an explanation concerning the method and amount of compensation provided to UDC, Dr. Vasquez and Dr. Lurie for reviewing plaintiff's file and making recommendations to Hartford.

Hartford asserts a number of misguided arguments concerning Dr. Vasquez and Dr. Lurie's compensation. For example, Hartford argues that UDC pays Dr. Vasquez and Dr. Lurie and the requested information is not within "Hartford's possession, custody, or control." "Possession, custody, or control" is the standard applicable to a Fed. R. Civ. P. 34 request for the production of documents. If Hartford is unable to answer the interrogatory

---

[3] The request would also include employees involved in the decision to grant plaintiff disability benefits during the first two years of her claim. There is no showing that such information would be relevant to plaintiff's current dispute concerning benefits.

because it does not know how compensation is determined it should simply say as much.

Hartford also argues that the information is not relevant because "the conflict of interest analysis relates to the claim administrator, not the administrator's paid consultants, and, therefore discovery is not permissible regarding such consultants." Citing, Abromitis v. Continental Cas. Co., Case No. 03-2425, 2004 WL 2491367 at * 3-4 (4th Cir. Nov. 5, 2004). Abromitis is not persuasive because it is an unpublished Fourth Circuit opinion and this court is bound to follow the Tenth Circuit holding in Murphy.[4] As noted above, Murphy held there are no "special procedural or evidential rules" for ERISA cases and the court applies Fed. R. Civ. P. 26 in evaluating discovery issues.

Hartford asserts that it referred plaintiff's file to an "independent third party vendor" [UDC] who, in turn, assigned the review to two "independent" physicians and there is no basis for the court to presume that "an independent physician will render a dishonest medical opinion in return for payment of his file review." The difficulty with this argument is that Hartford asserts, without evidence or analysis, that UDC and the two doctors are "independent." Plaintiff's discovery request for information concerning the method and amount of compensation paid to UDC and the reviewing doctors is relevant to the issue of whether the "third party vendor" is truly independent or financially biased. Accordingly,

---

[4] Moreover, the rationale for the cited language in Abromitis is difficult to discern. However, because this court is obligated to follow Murphy, this court will not analyze the Abromitis holding.

plaintiff's request to compel an answer to Interrogatory No. 5 shall be GRANTED.[5]

**Production Request Nos. 13, 14, and 15**
**Interrogatory Nos. 11, 12, and 13**

The above requests seek statistical information concerning Hartford's determination of AIG employee disability claims since 2008. For example, Request No. 13 seeks management reports showing the denial rates on AIG, Inc. employee disability claims for the years 2008-2011. Interrogatory Nos. 11, 12, and 13 seek similar information concerning the number of claims filed by AIG employees and the denial rates. Hartford argues that such statistics have limited probative value and that the cost associated with producing the requested statistical information outweighs the benefit to plaintiff "because Hartford's dual role conflict of interest makes its financial interest obvious."

Hartford has not presented any persuasive evidence that production of statistical information concerning its "determination" rates would be financially burdensome. Indeed, an insurance company would gather and analyze such information in order to determine the amount of premium to charge the insured (AIG and its employees). Under the circumstances, the suggestion that it would be burdensome to provide the information is rejected. The related argument that Hartford's conflict is "so obvious" is also rejected. Evidence showing

---

[5] Hartford has belatedly provided information concerning its contract with UDC and the amount of compensation paid in its surreply and, for all practical purposes, has answered Interrogatory No. 5 with respect to UDC. However, Hartford, *if it knows*, must explain the method and amount of compensation UDC paid to the doctors.

Hartford's rejection rate of disability claims may support plaintiff's contentions concerning Hartford's dual role conflict.[6]

The above discovery requests are largely duplicative and Hartford shall provide the information responsive to Interrogatory No. 12 and 13. If such information is provided, Hartford need not answer Interrogatory No. 11 or produce the documents responsive to requests 13, 14 and 15.

**Interrogatory Nos 7, 8, and 10**

Interrogatory Nos. 7, 8, and 10 ask Hartford to generate statistics concerning the individuals and consultants who reviewed or expressed any opinion concerning plaintiff's medical health for a three-year period. The request to compel this information shall be DENIED because it is unduly burdensome and would require Hartford to manually examine 2,796 claim file reviews performed by UDC between 2008 and 2011.[7]

---

[6] For example, if Hartford denied 99.9 percent of employee disability claims the evidence would strongly suggest that Hartford is selling disability insurance with little expectation of paying claims. The court has no knowledge of Hartford's statistical rate of denial at this time but notes that the Social Security Administration has determined that plaintiff is unable to perform "any work" while Hartford has concluded that she is capable of working. Hartford also apparently hired an individual to conduct surveillance of plaintiff. Although not determinative of the merits of plaintiff's case, the acts suggest efforts by Hartford to avoid paying plaintiff's disability claim.

[7] Hartford estimates that it would cost approximately $56,000 to conduct such a manual review.

**IT IS THEREFORE ORDERED** that plaintiff's motion to compel **(Doc. 23)** is **GRANTED IN PART**, consistent with the rulings herein.  Hartford shall provide the discovery responses ordered herein by **September 14, 2012.**

**IT IS FURTHER ORDERED** that Hartford's motion to file a surreply **(Doc. 34)** is **GRANTED**.  Hartford shall file its surreply by **September 7, 2012.**

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 4th  day of September 2012.

S/ Karen M. Humphreys

_____
KAREN M. HUMPHREYS
United States Magistrate Judge